IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARTA TORRES-SANTIAGO, et al.,

    Plaintiffs,

v.

ÁNGEL D. DÍAZ-CASIANO, et al.,

    Defendants.

Civil No. 08-1650 (GAG/BJM)

**OPINION AND ORDER**

Plaintiffs Phillip Cruz-Rosario ("Cruz") and Marta Torres-Santiago ("Torres") (collectively, "plaintiffs") filed a complaint against several Commonwealth of Puerto Rico police officers and the Superintendent of Police, in both their official and personal capacities, pursuant to 42 U.S.C. §1983 and Puerto Rico's constitution and civil law. (Docket No. 47). Defendants Christian Valles-Collazo ("Valles"), Ángel D. Díaz-Casiano ("Díaz-Casiano"), and Nelson Arocho ("Arocho") filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 52, 59), and defendant Pedro Toledo-Dávila ("Toledo") filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Docket No. 58). Plaintiffs have not opposed any of the motions. As the parties did not timely object to proceeding before a magistrate judge, this case was referred to me by the presiding district judge. (Docket No. 51). 28 U.S.C. §636; Roell v. Withrow, 538 U.S. 580 (2003). After careful consideration, Valles's motion to dismiss is granted, Díaz-Casiano's and Arocho's motion to dismiss is granted, and Toledo's motion for judgment on the pleadings is granted.

**STANDARD OF REVIEW**

A Rule 12(c) motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). In order to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion), a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); see also

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**                                                Page 2
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

Pérez-Acevedo, 520 F.3d at 29.  However, a court should "accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor."  Miss. Public Employees' Retirement System v. Boston Scientific Corp., 523 F.3d 75, 85 (1st Cir. 2008).  While a complaint need not contain detailed factual allegations in order to withstand dismissal, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citation omitted).  The court need not accept as true legal conclusions or "naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 557) (internal alteration omitted); Maldonado v. Fontanes, 568 F.3d 263, 267 (1st Cir. 2009).  The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible.  Iqbal, 129 S.Ct. at 1952 (citing Twombly, 550 U.S. at 570).  The court's assessment of the pleadings is context-specific, requiring the court "to draw on its judicial experience and common sense."  Id. at 1949.  The plaintiff must show more than the "sheer possibility that a defendant has acted unlawfully."  Id.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown, that the pleader is entitled to relief.  Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

On either a Rule 12(b)(6) or 12(c) motion to dismiss, "the facts are set forth as alleged in the complaint and inferences [are] taken in the light most favorable to . . . the non-moving party." Diaz-Romero v. Mukasey, 514 F.3d 115, 116 (1st Cir. 2008); Estate of Bennett v. Wainwright, 548 F.3d 155, 163, 165 (1st Cir. 2008).  The court may consider documents the authenticity of which are not disputed by the parties, documents central to the plaintiffs' claim, and documents sufficiently referred to in the complaint.  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (internal citation omitted).  When "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**   Page 3
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). Indeed, on a motion to dismiss, the court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint." Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000). The rationale for this principle is that "the main problem of looking to documents outside the complaint – lack of notice to plaintiff – is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Id. (internal citation omitted). Here, the defendants' motions cite and rely on several documents incorporated by reference into the complaint. Therefore, the following facts refer to the allegations contained in the complaint and to the documents incorporated by reference.

## FACTUAL BACKGROUND

Plaintiffs, residents of Carolina, filed their amended complaint on April 30, 2009. (Docket No. 47). The complaint alleges that on September 27, 2006, defendant Díaz-Casiano, a police officer then assigned to the Carolina Area Drug Unit, and three unnamed police officers (referred to in the complaint as Tom Doe, Mark Doe, and Sam Doe) stopped plaintiff Cruz outside the "El Barril" pub in Carolina. (Id., ¶ 12). One of the officers slapped Cruz while his pockets were searched; the frisk revealed nothing. (Id.). The police officers punched Cruz in the face approximately five times, causing him to bleed; they then walked him from El Barril to his home in a public housing project, where he lived with his girlfriend, plaintiff Torres. (Id.).

Upon arrival at the plaintiffs' home, where no one was present, the officers pulled out Cruz's keychain from his pocket and tested each key until they gained entry to the house, without Cruz's consent. (Id.; Docket No. 7-5, 1). The officers then "stormed" the house, where they illegally searched plaintiffs' room, destroying items including shelves and a dresser. (Docket No. 47, ¶ 12). In the room, they found Torres's purse, which they opened, removing a piece of identification, namely Torres's electoral card. (Id.; Docket No. 7-5, 1-2). During the search, the officers mocked Cruz and continued slapping and punching him. (Docket No. 47, ¶ 12).

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**   Page 4
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

After leaving plaintiffs' house, the officers took Cruz into an unmarked blue SUV and transported him back to El Barril, punching and harassing Cruz nonstop during the ride. (Id.). Torres was at El Barril when the officers arrived in several unmarked vehicles at approximately 6:00. (Docket No. 7-4, 2). Some of the unnamed officers approached Torres and asked for her name; when she asked why they needed to know, they identified themselves as police officers. (Id.; Docket No. 47, ¶ 12). After Torres gave her name, the officers placed her under arrest without informing her why she was being arrested. (Docket No. 47, ¶ 12; Docket No. 7-4, 2). The officers harassed and humiliated Torres; one officer attempted to put his hand in her pants pocket, but she removed his hand. (Docket No. 47, ¶ 12; Docket No. 7-5, 2). The officer asked what she had in her pocket; she told the officer that he knew he was not supposed to touch her there, to which he responded by swearing at her, telling her "I'm in charge here," and threatening her if she "got stupid." (Docket No. 7-4, 2) (court's translation).

The officers then transported Torres and Cruz in separate vehicles to the Iturregui police station in Carolina, Drugs Division. (Docket No. 47, ¶ 12; Docket No. 7-4, 2; Docket No. 7-5, 2). En route to the station, defendant Díaz-Casiano, who called himself "Colorao" (Docket No. 7-5, 2), punched Cruz in the body and face, removed what appeared to be his official weapon from its holster, and placed it against Cruz's head, repeatedly pulling the trigger; as Cruz was not aware the weapon was unloaded, he feared for his life and thought he would be killed. (Docket No. 47, ¶ 13).

At the police station, Torres observed a group of several people who had been detained, Cruz among them. (Docket No. 7-4, 2). The officers took the plaintiffs to a room where an unnamed police officer (Tom Doe) punched Cruz again in the face while screaming at Torres, asking her where drugs were. (Docket No. 47, ¶ 14). Both plaintiffs denied any knowledge of drugs. (Id.; Docket No. 7-5, 2). When Cruz denied having any information about drugs, defendant Díaz-Casiano punched the handcuffed Cruz in the face, and screamed, "Are you calling me a liar, you bastard?" (Docket No. 47, ¶ 14) (court's translation). Díaz-Casiano then left the room and returned with a can of roach spray, which he sprayed in both plaintiffs' eyes while calling them "worthless" and

Case 3:08-cv-01650-GAG-BJM   Document 70   Filed 11/16/09   Page 5 of 14

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**  Page 5
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

"cockroaches." (Docket No. 47, ¶ 15; Docket No. 7-4, 2; Docket No. 7-5, 2) (court's translation). The plaintiffs felt an intense burning sensation in their eyes and were unable to see; they feared they would lose their vision. (Docket No. 47, ¶ 15).

Díaz-Casiano next hit Cruz in the head with the can, jumped on a table in the room, and began hitting his own chest "like Tarzan" and yelling that he was "drunk with power." (Docket No. 47, ¶ 15; Docket No. 7-5, 2) (court's translation). He then approached Cruz, who had long hair, and told him, "I have to cut [your hair] because you look like a girl, and I have to send you to Bayamon looking handsome"; Díaz-Casiano then left the room, returned with a pair of scissors, and proceeded to cut Cruz's hair. (Docket No. 47, ¶ 16; Docket No. 7-4, 2) (court's translation). The other officers did not act to intervene. (Docket No. 47, ¶ 16; Docket No. 7-5, 2). Later, the plaintiffs were placed in separate cells. (Docket No. 7-4, 2).

At approximately 1:00 (September 28, 2006), after interviewing Torres, the officers informed her they would not be filing charges against her and told her to leave; Díaz-Casiano did not return the identification card the officers had taken from her, and she had to walk home. (Docket No. 47, ¶ 17; Docket No. 7-4, 2). Torres feared for her life and feared that the officers would come back to her residence to arrest or harass her again. (Docket No. 47, ¶ 17). Criminal charges relating to controlled substances were filed against Cruz, but the case was later dismissed. (Docket No. 47, ¶ 17; Docket No. 7-5, 2).

On October 9 and 16, 2006, respectively, Torres and Cruz filed complaints with the Puerto Rico Police Department's Division of Public Integrity for the Carolina Region to report the officers' abusive behavior. (Docket No. 47, ¶ 18; Docket No. 7-4 [Torres Complaint]; Docket No. 7-5 [Cruz Complaint]). Torres' complaint named Díaz-Casiano and stated that four other officers had been involved in the incident. (Docket No. 7-4, 1, 2). Torres stated that she named Díaz-Casiano in the complaint "because it was the name of the agent which appeared in the criminal complaint filed against [Cruz] and he [Díaz-Casiano] has to know the name of these [other] agents." (Id., 2). The police department did not conduct an investigation into the incident. (Id.). The plaintiffs allege that,

Case 3:08-cv-01650-GAG-BJM   Document 70   Filed 11/16/09   Page 6 of 14

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**  Page 6
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

as a direct and proximate result of the officers' acts, they have suffered and will continue to suffer extreme emotional stress, pain, anxiety, and trauma requiring regular physical and mental treatment and medication; they also allege that they have been unable to work, and have suffered and will continue to suffer a loss of income and earnings. (Id., ¶¶ 19-21).

The plaintiffs filed their original complaint on June 16, 2008 (Docket No. 1), and their amended complaint on April 30, 2009. (Docket No. 47). The amended complaint names as defendants Díaz-Casiano, Arocho, Valles, and Toledo; the Area Commander of Carolina, to whom Díaz-Casiano was assigned at all relevant times, as John Doe; the unknown police officers involved in the incident, as Richard, Tom, Mark, and Sam Doe; and unknown insurance companies A, B, and C. (Id., ¶¶ 6-10). The defendants (excluding the insurance companies) are all sued in their personal capacities as well as in their official capacities as agents of the Police Department. (Id., ¶ 11).

## DISCUSSION

Plaintiffs bring this action to federal court under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. §1983.

To prevail in a Section 1983 cause of action, a plaintiff must prove that the act in question occurred "under color of state law" and deprived him of rights secured to him either by the United States Constitution or by federal law. Redondo-Borges v. United States HUD, 421 F.3d 1, 7 (1st Cir. 2005). For purposes of Section 1983, Puerto Rico is deemed equivalent to a state. Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002). Importantly, Section 1983 does not create substantive rights, but rather provides a procedural mechanism for enforcing federal constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 271 (1994). Therefore, a Section 1983 plaintiff must identify the particular federal right that he seeks to enforce via judicial

proceedings. Moreover, a defendant may be liable under Section 1983 only if he was personally involved in the deprivation of the plaintiff's rights or if his conduct amounted to the condonation or tacit authorization of another's deprivation of the plaintiff's rights. Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007).

## I. Eleventh Amendment Immunity

Defendants Valles, Díaz-Casiano, and Arocho argue that the Eleventh Amendment to the United States Constitution bars the plaintiffs from suing them for money damages in their official capacities. (Docket No. 52, 6; Docket No. 59, 6). The court previously found that the original complaint stated a cause of action against the defendants in their personal capacities, except as to minor claims, and ruled that "[a]ny remedy in official capacity is limited to declaratory and injunctive relief, if appropriate." (Docket No. 4, 1). In another order, the court granted in part Valles's motion to dismiss the original complaint's claims against him, noting, "The Eleventh Amendment bars any official capacity claims for damages, but not injunctive and declaratory relief." (Docket No. 26). Yet the amended complaint, which was filed after these orders,[1] explicitly states that defendants Valles, Díaz-Casiano, Arocho, and Toledo "are all sued in their personal and official capacities as agents of the Police Department" and requests damages and attorneys' fees and costs but no injunctive or declaratory relief. (Docket No. 47, ¶ 11).

The Eleventh Amendment jurisdictionally bars the federal courts from entertaining claims for money damages against a state, including Puerto Rico, without the state's consent. U.S. Const. amend. XI; Rodriguez Diaz v. Sierra Martinez, 717 F. Supp. 27, 29 (D.P.R. 1989) (internal citation omitted). The enactment of Section 1983 did not abrogate the states' Eleventh Amendment immunity. See, e.g., Quern v. Jordan, 440 U.S. 332, 342 (1978). Suits against police officers in their official capacity for damages are tantamount to actions directly against the state. Will v. Mich. Dep't

---

[1] The plaintiffs' motion in compliance with the court's order to show cause (see Docket No. 4) stated that the amended complaint was attached, but the amended complaint was not attached to the motion. (Docket No. 5). The amended complaint was finally filed on April 30, 2009. (Docket No. 47).

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**   Page 8
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

of State Police, 491 U.S. 58 (1989). However, the Eleventh Amendment does not bar suits to impose personal liability on state officers under Section 1983. Hafer v. Melo, 502 U.S. 21, 29-31 (1991).

In the amended complaint, the plaintiffs bring suit for damages only against Puerto Rico Police Department officers Valles, Arocho, and Díaz-Casiano and Superintendent of Police Toledo in both their official and personal capacities. As the court has stated before, the named defendants are immune from suit in their official capacities under the Eleventh Amendment. Thus, the court **DISMISSES** with prejudice plaintiffs' claims against the named defendants[2] in their official capacities.

## II.   Statute of Limitations

The three defendant officers, Valles, Arocho, and Díaz-Casiano, argue that the claims against them in their personal capacities are time-barred. (Docket No. 52, 18-20; Docket No. 59, 17-20). Claims brought under Section 1983 borrow the forum state's statute of limitations for personal injury claims. Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 114 (1st Cir. 2009) (internal citations omitted). In Puerto Rico, the statute of limitations governing tort actions is one year; that period applies here. Id.; 31 L.P.R.A. § 5298(2). However, while Puerto Rico law provides the applicable prescriptive period, federal law determines the date on which the claim accrued. Id. (internal quotation and citation omitted). The limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his claim. Id. (internal quotation and citations omitted). As the limitations period of actions is a substantive, not a procedural, matter in Puerto Rico, the court applies Puerto Rico's tolling rules. Id. (internal quotation and citations omitted).

Puerto Rico's tolling rules provide three ways a plaintiff can toll the statute of limitations; the only way relevant here is the sending of an "extrajudicial" letter. Id.; 31 L.P.R.A. § 5303

---

[2] In their motions to dismiss, the three defendant officers appear in both their personal and official capacities, asserting Eleventh Amendment immunity as to their official capacity. (Docket No. 52, 59). In his motion for judgment on the pleadings on the amended complaint, Toledo appears in his personal capacity only and therefore does not assert Eleventh Amendment immunity; however, in the interests of clarity and caution, I include him in his official capacity in the dismissal. (Docket No. 58).

("section 5303"). "[A] letter sent by a tort plaintiff to the tortfeasor, complaining of the tortious conduct and demanding compensation, is an extrajudicial claim that, if timely, interrupts the prescription of the cause of action in tort." Santana-Castro, 579 F.3d at 114 (internal citation and quotation omitted). An "extrajudicial claim," as defined by the Puerto Rico Supreme Court, "stands for demand or notice. That is: it is an act for which the holder of a subjective right, addresses the passive subject of said right, demanding that he adopt the required conduct." Id. at 115 (citing Cintrón v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582, 592 (1990)).

However, an extrajudicial letter will not toll the limitations period for all claims arising out of the same facts: the Puerto Rico Supreme Court has limited such a letter's tolling effect to situations where the letter is "identical" to a subsequently filed complaint. Id. at 114 (internal citations and quotations omitted). There are three components to the identicality requirement: (1) the extrajudicial letter and subsequent complaint must seek the same form of relief; (2) the causes of action asserted in the complaint must be based on the same substantive claims as asserted in the extrajudicial letter; (3) provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds, the claims must be asserted against the same defendants in the same capacities; new defendants should not be added. Id. (internal citations, quotations, and alterations omitted). In order to toll the statute of limitations with respect to subsequent claims, an extrajudicial letter must give fair notice of the claims that are subsequently raised; the plaintiff may not sidestep the statutes of limitations' notice function by asserting different claims in belated federal court complaints. Id. at 115 (internal citation and quotation omitted).

In deciding a 12(b)(6) motion to dismiss, the court may consider the plaintiffs' complaint, documents central to the plaintiffs' claim, and documents sufficiently referred to in the complaint. Curran, 509 F.3d at 44. Here, the plaintiffs' amended complaint incorporates by reference the October 9 and 16, 2006, complaints filed by Torres and Cruz, respectively, so the court may consider those complaints. (Docket No. 47, ¶ 18; Docket No. 7-4; Docket No. 7-5). Furthermore, the extrajudicial claim letters sent to the Department of Justice and Superintendent Toledo on August

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**  Page 10
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

1 and September 13, 2007, are central to the plaintiffs' claim, though they are not referred to in the amended complaint: they describe the abuses suffered, notify the Police Department of claims against its officers, and were intended to toll the statute of limitations; moreover, the Department's failure to undertake an investigation or to discipline the named officers forms part of the basis for the plaintiffs' supervisory liability claim against Toledo.[3]  (Docket No. 7-2, 7-3, 7-6).  Therefore, the court may properly consider the August and September letters as well as the October complaints.

These documents all describe with precision and specificity the events that took place on September 27 and 28, 2006; they describe the search and seizure of the plaintiffs, their home, and Torres's identification card, and they recite in detail the plaintiffs' alleged arrest, detention, and physical abuse, as well as the criminal complaint subsequently brought against plaintiff Cruz.  The October complaints were filed against Díaz-Casiano only by name, along with four unnamed agents. (Docket No. 7-4, 7-5).  The August and September letters list Díaz-Casiano, Arocho, and Valles as "witnesses," but only Díaz-Casiano is mentioned by name in the allegations of police misconduct; Arocho and Valles are mentioned by name only once, in the list of witnesses, and the allegations never describe them as active participants in the incident.  (Docket No. 7-2, 7-3, 7-6).

The defendant officers contend that the extrajudicial letters and complaints are insufficient for the plaintiffs to toll the statute of limitations as to these officers personally.[4]  (Docket No. 52, 18-19; Docket No. 59, 19-20).  The defendant officers argue that sending a letter to the Department of Justice headquarters and the Police Department did not toll the statute of limitations as to the claims

---

[3] The Department of Justice and the Police Department received the August 1 letter on August 3 and 6, respectively; they received the September 13 letter on September 20 and 21, respectively. (Docket No. 5, ¶¶ 2-3).

[4] In their motion in compliance with the court's order to show cause why the case should not be dismissed as time-barred (to which the extrajudicial letters and complaints were attached), the plaintiffs asserted that the extrajudicial claims tolled the applicable statute of limitations under section 5303. (Docket No. 5, ¶ 4).  The court agreed, to the extent that it concluded that the plaintiffs' submission of the extrajudicial claim letters and complaints made a sufficient showing of tolling to satisfy the show-cause order.  (Docket No. 6, 26; see also Docket No. 7, 8).  The instant motions to dismiss were made after the court entered that order on the plaintiffs' motion showing cause.  (Docket No. 52, 59).

Case 3:08-cv-01650-GAG-BJM   Document 70   Filed 11/16/09   Page 11 of 14

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**   Page 11
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

filed against Valles, Arocho, and Díaz-Casiano. (Docket No. 52, 19; Docket No. 59, 20). The court agrees. The August and September letters were addressed only to the Secretary of Justice and defendant Toledo. The plaintiffs do not allege that Valles, Díaz-Casiano, or Arocho knew about those letters or their contents, nor do they allege that the three officers knew about the October complaints. Puerto Rico law is clear that an extrajudicial letter "must be addressed to the . . . passive subject of the right, not to [a] third party." Santana-Castro, 579 F.3d at 116 (internal citations omitted). Subordinate officers are not held to be on constructive notice of claims made against them in an extrajudicial letter to a supervising officer. Id. at 116-17.

Plaintiffs' failure to allege that the defendant officers knew of the claims against them is fatal to the plaintiffs' claim. Id. at 116. Since the defendant officers were not allegedly on notice of the claims against them, the extrajudicial letters and complaints were insufficient to toll the statute of limitations period. Neither the original nor the amended complaint was filed until after the one-year statute of limitations period had expired. Therefore, the plaintiffs' claims against the defendant officers, Valles, Arocho, and Díaz-Casiano are time-barred.

Accordingly, the court hereby **GRANTS** these defendants' motions and **DISMISSES** with prejudice the plaintiffs' Section 1983 claim against these defendants in their personal capacities for violations of the plaintiffs' Fourth and Fourteenth Amendment rights.[5] The federal claims have thus been dismissed against the three named defendant officers in both their official and personal capacities; this leaves only the plaintiffs' second cause of action, brought under the Puerto Rico constitution, article II, sections 1, 7, and 10, and two provisions of the Civil Code, 1 L.P.R.A § 10 and 31 L.P.R.A. § 5141. (Docket No. 47, ¶¶ 33-35). The court declines to exercise its supplemental jurisdiction over these state law claims. See 28 U.S.C. § 1367(c); Rodríguez v. Doral Mortgage

---

[5] Because I agree with the three named defendant officers that the plaintiffs' claims are time-barred, I need not address Arocho's and Valles's arguments that the plaintiffs fail to state a Section 1983 claim against them because neither Arocho nor Valles is alleged to have been personally involved in the alleged abuses, as required for Section 1983 liability. (Docket No. 52, 8-16; Docket No. 59, 9-16).

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**  Page 12
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). The same statute of limitations analysis would apply to these claims as to the federal claims. Thus, plaintiffs' state law claims against Valles, Arocho, and Díaz-Casiano are **DISMISSED** with prejudice.

### III.     Section 1983 Supervisory Liability

Defendant Toledo, in his personal capacity, contends that the evidence in the record fails to make out a claim against him based on supervisory liability under Section 1983. Toledo argues that the plaintiffs have shown no facts which establish Toledo's personal involvement and have failed to otherwise show supervisory liability. (Docket No. 58, 7-21). The plaintiffs do not contend that Toledo was personally involved with the events of September 27-28, 2006; rather, they argue that Toledo is liable under Section 1983 for the violation of plaintiffs' Fourth and Fourteenth Amendment rights on the theory of supervisory liability for his failure to adequately supervise, train, and discipline the officers under his command. (Docket No. 47, ¶¶ 23-32).

Under Section 1983, supervisory liability cannot be predicated on the theory of *respondeat superior*, and supervisors may only be held liable on the basis of their own acts or omissions. Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005); see also Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87 (1st Cir. 1994). Nevertheless, a supervisor may be liable under Section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another. Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998). Absent direct participation, a supervisor may be held liable where (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference. Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008); see also Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999); Hernandez-Lopez v. Pereira, 380 F. Supp. 2d 30, 34-35 (D.P.R. 2005). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995).

Case 3:08-cv-01650-GAG-BJM   Document 70   Filed 11/16/09   Page 13 of 14

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**                                    Page 13
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

On a motion to dismiss, and by extension on a motion for judgment on the pleadings, the court must not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Merely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a Section 1983 claim against the supervisor. Figueroa-Flores v. Acevedo-Vilá, 491 F. Supp. 2d 214, 226 (D.P.R. 2007); see also Esteras v. Díaz, 266 F. Supp. 2d 270 (D.P.R. 2003).

Here, the plaintiffs' amended complaint makes only conclusory allegations that Toledo knew or should have known of the defendant officers' violent propensities; knowingly failed to properly train, supervise, or discipline the defendant officers; knowingly failed to implement reasonable or adequate policies and procedures to avoid abuse of plaintiffs' civil rights; and personally reviewed and/or adjudicated plaintiffs' administrated complaint and failed to act on it – all of which, the complaint alleges, constituted gross negligence amounting to deliberate or reckless indifference to the plaintiffs' constitutional rights. (Docket No. 47, ¶¶ 23-31).

These "bald assertions" and "unsupportable conclusions" are plainly deficient to survive a motion for judgment on the pleadings. The fact that their administrative complaint (whether or not personally reviewed by Toledo, as conclusorily alleged) did not result in disciplinary action against the defendant officers does not reflect Toledo's knowing failure to adequately train, supervise, and discipline them, amounting to callous or reckless indifference. See Febus-Rodríguez, 14 F.3d at 92. Aside from the absence of disciplinary action on the administrative complaint, the plaintiffs have not offered any other evidence in support of their assertions against Toledo, and further, they have established no affirmative link between Toledo's acts or omissions and his subordinates' alleged violation of the plaintiffs' constitutional rights. Rather, the plaintiffs only set forth generally that Toledo failed to train, supervise, and discipline officers under his control. Therefore, the plaintiffs have failed to allege a plausible entitlement to relief under Section 1983.

Accordingly, the court **DISMISSES** with prejudice plaintiffs' Section 1983 claim against defendant Toledo in his personal capacity for violation of the plaintiffs' Fourth and Fourteenth

Case 3:08-cv-01650-GAG-BJM   Document 70   Filed 11/16/09   Page 14 of 14

**Marta Torres-Santiago, et al. v. Angel D. Díaz-Casiano, et al.**   Page 14
Civil No. 08-1650 (GAG/BJM)
**OPINION & ORDER**

Amendment rights. This leaves the plaintiffs' second cause of action, brought under the Puerto Rico constitution, article II, sections 1, 7, and 10, and two provisions of the Civil Code, 1 L.P.R.A § 10 and 31 L.P.R.A. § 5141. (Docket No. 47, ¶¶ 33-35). The court declines to exercise its supplemental jurisdiction over plaintiffs' state law claims against Toledo. See 28 U.S.C. § 1367(c); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Therefore, plaintiffs' state law claims against Toledo are **DISMISSED** without prejudice.[6]

## CONCLUSION

For the foregoing reasons, the court **GRANTS** Valles's motion to dismiss (Docket No. 52), **GRANTS** Arocho's and Díaz-Casiano's motion to dismiss (Docket No. 59), and **GRANTS** Toledo's motion for judgment on the pleadings. (Docket No. 58). Judgment to be entered dismissing with prejudice all claims against defendants in their official capacities, all claims against defendants Valles, Arocho, and Díaz-Casiano in their personal capacities, and the federal claims against defendant Toledo in his personal capacity; judgment to be entered dismissing without prejudice all claims against the "John Doe" defendants, and the state law claims against defendant Toledo..

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 16th day of November, 2009.

S/Bruce J. McGiverin
**BRUCE J. MCGIVERIN**
**United States Magistrate Judge**

---

[6] Because defendants have not identified or served any of the "John Doe" defendants, I am also dismissing the claims against them without prejudice.